# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: July 25, 2019

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * | | |
| GLENN S. DOUGLAS, | * | No. 14-1226V |
| | * | |
| Petitioner, | * | Special Master Sanders |
| | * | |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH | * | Decision; Final Attorneys' Fees and |
| AND HUMAN SERVICES, | * | Costs; Hourly Rate; Reduction of |
| | * | Billable Hours |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * | | |

*Milton Clay Ragsdale, IV*, Ragsdale LLC, Birmingham, AL, for Petitioner.
*Darryl R. Wishard*, United States Department of Justice, Washington, D.C., for Respondent.

## DECISION ON FINAL ATTORNEYS' FEES AND COSTS[1]

On January 18, 2019, Glenn Douglas ("Petitioner") moved for an award of final attorneys' fees and costs ("AFC"). Pet'r's Mot. for AFC, ECF No. 63. After careful consideration, I have determined to grant this request in part.

### I. Procedural History

On December 22, 2014, Petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §§ 300aa-10 to 34 (2012). Petitioner alleged that he suffered from optic neuritis as a result of the influenza ("flu") vaccine he received on November 27, 2012. Pet. at 1, ECF No. 1.

---

[1] This decision shall be posted on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the Internet**. As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3578, codified as amended, 42 U.S.C. 300aa-10 *et seq.* (2012) (hereinafter "Vaccine Act" or "the Act"). For ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

Petitioner submitted his immunization record, affidavit, and medical records over the next few months. *See* ECF Nos. 7, 10, 12. On March 24, 2015, Respondent filed a status report requesting time for the parties "to explore a settlement of this case." ECF No. 13. On August 14, 2015, Petitioner filed a status report stating that he had submitted his settlement demand to Respondent. ECF No. 18. Over the next seven months, the parties retained a life care planner and an economist to assess Petitioner's claimed damages, while continuing their settlement negotiations. ECF Nos. 19, 21–23. On April 13, 2016, Petitioner submitted updated medical records. ECF No. 24. The parties continued their settlement negotiations and on June 6, 2016, Respondent stated that "[t]he parties ha[d] jointly completed life care planning." ECF No. 26. Respondent also stated that he had provided Petitioner with a cost estimate for the proposed future care needs and was awaiting Petitioner's assessment of that cost estimate. *Id*. On August 22, 2016, Petitioner asserted that he "believe[d] that he ha[d] submitted all necessary documentation related to his claim[.]" ECF No. 28.

On September 20, 2016, Petitioner indicated that he had received a settlement proposal from Respondent. ECF No. 29. Over the next four months, the parties reviewed each other's proposals and revisions to the life care plan and to Petitioner's loss of income and pain and suffering. ECF Nos. 30–31, 34.

On February 15, 2017, I held a status conference to discuss the status of the settlement negotiations. *See* Scheduling Order, ECF No. 35. I asked the parties whether there was a specific disputed issue that required mediation or a ruling. ECF No. 36. Petitioner raised the possibility of an insurance company seeking payment from any future settlement as a potential issue. *Id*. Respondent stated that he did not see the need for mediation at that time. *Id*. The parties continued their settlement negotiations over the next six months. *See* ECF Nos. 37, 39, 41.

On August 17, 2017, the parties contacted Chambers to inform me that they had reached a tentative settlement agreement and requested a 15-week order. *See* Inf. Comm., docketed Aug. 17, 2017; ECF No. 43. Respondent approved the settlement agreement on November 9, 2017, ECF No. 44, but Petitioner did not sign it. *See* Pet'r's Status Report, ECF No. 46. I held a status conference on January 16, 2018, to ask why Petitioner was unable to sign the stipulation. ECF No. 47. Petitioner remained unwilling to sign the document and we discussed whether a guardian or legal representative was necessary to represent Petitioner's best interests. *Id*. Petitioner's counsel indicated that obtaining a guardian would be the best way forward, particularly if Petitioner did not sign the stipulation. *Id*. On March 19, 2018, Petitioner filed a status report indicating that his mental state had deteriorated and that he had "engaged the services of an attorney for the purpose of evaluating the necessity of the appointment of a guardian[.]" ECF No. 48 at 1. During a June 13, 2018 status conference, I asked Respondent whether he had any objections to awarding guardianship fees and costs. ECF No. 50. Respondent indicated that he did not. *Id*.

Following Petitioner's neuropsychological evaluation on July 3, 2018, Petitioner stated that "alternative dispute resolution [("ADR")], such as mediation or neutral evaluation by a special master, would be beneficial to [him] and increase the likelihood that the settlement may

2

be finalized." ECF No. 51 at 1. I held another status conference on September 6, 2018, during which it was revealed that a recent medical review of Petitioner showed that guardianship was not appropriate for him. ECF No. 53. Instead, he proposed meeting with another special master to receive neutral feedback on the proposed settlement. *Id*. Respondent did not oppose Petitioner's proposition, provided there was no expectation the settlement agreement would increase in value. *Id*. I stated that a complete ADR proceeding would not be necessary but ordered the case to be referred to another special master for a settlement conference. *Id*. This case was then referred to Chief Special Master Dorsey. ECF No. 54. The parties' settlement conference was held on October 23, 2018. *See* Min. Entry, docketed Oct. 23, 2018.

On November 7, 2018, Respondent filed the parties' stipulation for award. ECF No. 57. In it, the parties stipulated that Petitioner would receive a lump sum of $33,283,07 as compensation for first-year life care expenses. *Id*. at 2. The parties also stipulated that Respondent would issue an amount sufficient to purchase annuity contracts paid to a life insurance company. *Id*. On November 8, 2018, I approved the parties' requested amount for Petitioner's compensation. ECF No. 58.

On January 18, 2019, Petitioner filed a motion for final attorneys' fees and costs for the work performed by his counsel. Pet'r's Mot. for AFC, ECF No. 63. In his motion, Petitioner requested $110,185.00 in attorneys' fees and $20,846.89[3] in costs, totaling $131,031.89. *Id*. at 1, 3–4. On January 28, 2019, Respondent filed his response to Petitioner's motion for final attorneys' fees and costs. Resp't's Response, ECF No. 64. Respondent stated that he was "satisfied the statutory requirements for an award of attorneys' fees and costs [were] met in this case." *Id*. at 2. Respondent requested that I "exercise discretion and determine a reasonable award for attorneys' fees and costs." *Id*. at 3. Petitioner did not file a reply. This matter is now ripe for adjudication.

## II. Reasonable Attorneys' Fees and Costs

The Vaccine Act permits an award of reasonable attorneys' fees and costs. 42 U.S.C. § 300aa–15(e)(1)(A)–(B). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id*. at 1347–48. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id*. at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing

---

[3] In his motion, Petitioner requested $20,884.36 in costs. Pet'r's Mot. for AFC at 3. A careful review of the record, however, shows that this amount was requested due to a mathematical error. The correct figure is $20,846.89.

3

records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" Saxton, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. n.11. Petitioners bear the burden of providing "satisfactory evidence" to prove that the requested hourly rate is reasonable. *Id*.

Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). When determining the relevant fee reduction, special masters need not engage in a line-by-line analysis of petitioners' fee application. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1991), *rev'd on other grounds and aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521 (internal citations omitted).

      a.    **Hourly Rates**

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015–2016, 2017, 2018, and 2019 can be accessed online.[4]

Petitioner requests the following rates of compensation for the work of two attorneys at the law firm Ragsdale LLC:

Milton Clay Ragsdale:[5]

---

[4] The 2015–2016 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf. The 2017 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf. The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf. The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf. The hourly rates contained in these schedules are updated from the decision in *McCulloch*, 2015 WL 5634323.

[5] Pet'r's Mot. for AFC at 2.

4

    2014 – $385
    2015 – $385
    2016 – $385
    2017 – $400
    2018 – $420 & $210 travel rate
    2019 – $420

  Allison L. Riley:[6]
    2014 – $200
    2015 – $225
    2016 – $250
    2017 – $270
    2018 – $290 & $145 travel rate
    2019 – $290

  Petitioner also requests the following rate of compensation for the attorney who worked on Petitioner's case before referring his case to Ragsdale LLC:

  Elizabeth E. Chambers:[7]
    2014 – $325
    2015 – $325

  Lastly, Petitioner requests the following rates of compensation for the work of two Ragsdale LLC paralegals:

  Anne Burke:[8]
    2014 – $100
    2015 – $100

  Amy Johnson:[9]
    2015 – $135
    2016 – $135
    2017 – $135
    2018 – $150
    2019 – $150

### Mr. Ragsdale

  Mr. Ragsdale has over thirty-five years of experience in civil litigation. *See* Pet'r's Mot. for AFC Ex. A at 2, ECF No. 63-1. His hourly rates are consistent with the *McCulloch* ranges for attorneys with his experience. In *Greer*, Mr. Ragsdale was awarded $385 per hour for work performed in 2015–2016 and $400 per hour for work performed in 2017. *See Greer v. Sec'y of*

---

[6] *Id*. at 3.
[7] *Id*.
[8] *Id*.
[9] *Id*.

*Health & Human Servs.*, No. 16-1345V, 2018 WL 1125695, at *4–5 (Fed. Cl. Spec. Mstr. Jan. 17, 2018). I will also award these rates in the instant case. In *Brown* and *Robinson*, Mr. Ragsdale was awarded $410 per hour for work performed in 2018. *See Brown v. Sec'y of Health & Human Servs.*, No. 17-253V, 2018 WL 5095121, at *2 (awarded $410 per hour for work performed even though he had requested $420); *Robinson v. Sec'y of Health & Human Servs.*, No. 15-1352V, 2018 WL 4390069, at *1. I agree with the rate awarded for 2018 and will also compensate Mr. Ragsdale at the rate of $410 per hour for 2018. I also find Mr. Ragsdale's hourly rate of $210 for travel in 2018 reasonable and award it accordingly. *See Dougherty v. Sec'y of Health & Human Servs.*, No. 15-1333V, 2019 WL 1301903, at *3 (Fed. Cl. Spec. Mstr. Mar. 6, 2019) (noting that the Vaccine Program will only compensate attorneys for travel time at one-half of their typical rate absent some evidence that case-related work was being performed for part of that time.). Lastly, I find that Mr. Ragsdale's rate of $420 for 2019 is appropriate.

### Ms. Riley

Ms. Riley has been a practicing attorney since 2011. *See* Pet'r's Mot. for AFC Ex. A at 3. Ms. Riley's requested rates are within the *McCulloch* ranges for attorneys with her experience. In *Greer*, she was awarded $225 per hour for work performed in 2015, $250 per hour for work performed in 2016, and $270 per hour for work performed in 2017. *See Greer*, 2018 WL 1125695, at *5. And in *Coiro-Lorusso* and *Robinson*, Ms. Riley was awarded $290 per hour for work performed in 2018. *See Coiro-Lorusso v. Sec'y of Health & Human Servs.*, No. 04-258V, 2018 WL 2770824, at *2 (Fed. Cl. Spec. Mstr. May 1, 2018); *Robinson*, 2018 WL 4390069, at *1. I also find these rates reasonable and will award them to Petitioner. Lastly, I find Ms. Riley's hourly rate of $145 for travel in 2018 reasonable and award it accordingly. *See Dougherty*, 2019 WL 1301903, at *3.

### Ms. Chambers

Ms. Chambers has over fifteen years of experience. *See* Pet'r's Mot. for AFC, Ex. A at 4. Ms. Chambers's requested rates are within the *McCulloch* ranges for attorneys with her experience. In *Greer*, she was awarded $325 per hour for work performed in 2015–2017. *See Greer*, 2018 WL 1125695, at *2. Based on these previous awards, I find her requested rates reasonable and award Petitioner $325 per hour for Ms. Chambers's work performed in 2014 and 2015.

### Ms. Burke

Petitioner requested $100 per hour for the work performed by Ms. Burke in 2014 and 2015. I find her requested rate reasonable and award it to Petitioner.

### Ms. Johnson

Ms. Johnson has been a paralegal for nine years. *See* Pet'r's Motion for AFC, Ex. A at 4. In *Brown*, she was awarded $135 per hour for work performed in 2016 and 2017. *Brown*, 2018 WL 5095121, at *2. I find her requested rates reasonable and are in line with forum rates for paralegals in each respective year.

### b.      Reduction of Billable Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation[.]" *Avera*, 515 F.3d at 1348. Counsel should not include in their requests hours that are "excessive, redundant, or otherwise unnecessary[.]" *Saxton*, 3 F.3d at 1521 (internal quotations omitted). In total, Petitioner requests compensation for 133.8 hours of work expended by Mr. Ragsdale, 178.7 hours of work expended by Ms. Riley, 18.3 hours of work expended by Ms. Chambers, 27.9 hours of work expended by Ms. Burke, and 56.4 hours of work expended by Ms. Johnson.

I have reviewed the billing records and find that adjustments to the overall number of hours billed are required. First, Petitioner requests compensation for clerical and administrative work, including filing documents on CM/ECF, reviewing routine court filings, and reviewing medical billing. For example, the firm's paralegals' billing entries included time for reviewing hospital billing. *See, e.g.*, Pet'r's Mot. for AFC Ex. C at 7, 9, ECF No. 63-3. And Ms. Riley billed time for reviewing orders and setting status conferences and status report deadlines. *See, e.g.*, *id.* at 18–19. Second, Petitioner requests compensation at an attorney's hourly rate for paralegal work. On multiple occasions, Mr. Ragsdale and Ms. Riley billed time for conferences with providers to obtain Petitioner's medical records. *See, e.g.*, *id.* at 3. Third, many of Petitioner's billing entries are redundant, while the amount of time spent by counsel on certain tasks was excessive. For instance, Ms. Burke, Ms. Riley, and Mr. Ragsdale billed at least 7 hours for reviewing the same medical files. *See id.* at 2. Further, Mr. Ragsdale and Ms. Riley both billed for research into past settlements. *See id.* at 15. Lastly, counsel's billing records contain numerous entries which are not compensable in the Vaccine Program because they constitute intraoffice communications. For example, Mr. Ragsdale and Ms. Riley billed for ongoing meetings with one another about Petitioner's case. *See, e.g.*, *id.* at 6, 8–9, 10–12, 18–19.

For these reasons, and after carefully reviewing Petitioner's motion for fees and costs, I find that a reduction in Petitioner's fees award is warranted. In making reductions, a line-by-line evaluation of the fee application is not required. *Broekelschen*, 102 Fed. Cl. at 729; *see also Wasson*, 24 Cl. Ct. at 484. Rather, special masters may "'render a decision based on general guidelines as to a reasonable fee[]'" in the context of the Vaccine Program and of this case in particular. *Wasson*, 24 Cl. Ct. at 484.

### i.      Clerical and Administrative Work

Billing at any rate for clerical and other administrative work is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (noting that tasks that "were primarily of a secretarial and clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates."). Clerical and administrative work includes tasks such as setting up meetings, reviewing invoices, filing documents, and researching basic aspects of the Vaccine Program, "for which neither an attorney nor a paralegal should charge." *Hoskins v. Sec'y of Health & Human Servs.*, No. 15-071V, 2017 WL 3379270, at *3, 6–7 (Fed. Cl. Spec. Mstr. July 12, 2017); *see also Floyd v. Sec'y of Health & Human Servs.*, No. 13-556V, 2017 WL 1344623, at *5 (Fed. Cl. Spec. Mstr. Mar. 2, 2017) ("[S]ome tasks performed by

paralegals were clerical / secretarial in nature. Examples include scheduling status conferences . . . preparing compact discs . . . and filing documents through the CM/ECF system."); *Kerridge v. Sec'y of Health & Human Servs.*, No. 15-852V, 2017 WL 4020523, at *6 (Fed. Cl. Spec. Mstr. July 28, 2017) (noting that billing for "administrative tasks" . . . are not compensated in the Vaccine Program); *Silver v. Sec'y of Health & Human Servs.*, No. 16-1019V, 2018 U.S. Claims LEXIS 1058, at *15 (Fed. Cl. Spec. Mstr. July 31, 2018) (noting that "'receiv[ing], review[ing,] and process[ing]' records and court orders, and noting deadlines, are all clerical tasks.").

Petitioner's counsel's billing records contain numerous entries that are best characterized as clerical and administrative work. For example, Ms. Riley billed time for reviewing routine court orders, notices of filing exhibits, and notices of appearance. *See, e.g.,* Pet'r's Mot. for AFC, Ex. C at 4–7. Further, both Mr. Ragsdale and Ms. Riley billed time for filing documents through the CM/ECF, including the docketing of deadlines, and for checking CM/ECF for updates—tasks that are routine clerical activities generally performed by paralegals at a law firm and which are not compensable in the Vaccine Program. *See, e.g.*, *id*. at 5, 16, 18; *Rochester*, 18 Cl. Ct. at 387; *Arranga v. Sec'y of Health & Human Servs.*, No. 02-1616V, 2018 WL 2224959, at *3 (Fed. Cl. Spec. Mstr. Apr. 12, 2018). At least 7 hours of Petitioner's billable time are best characterized as such work, and I find that this supports a reduction in attorneys' fees.

### ii.     Paralegal Time

Attorneys in the Vaccine Program are permitted to perform and bill for paralegal-level work, but such work must be billed at a rate that is comparable to what a paralegal would be paid for performing the same task. *Doe ex rel. Estate of Doe v. Sec'y of Health & Human Servs.*, No. XX-XXXV, 2010 WL 529425, at *9 (Fed. Cl. Spec. Mstr. Jan. 29, 2010) (citing *Missouri v. Jenkins*, 419 U.S. 274, 288 (1989)) ("[T]he rate at which [certain] work is compensated turns not on who ultimately performed the task but instead on the nature of the task performed."). Paralegal tasks include routine letter-writing, medical record requests and authorizations, preparation of exhibits, and preparation of routine filings. *Id*. (citing *Scoutto v. Sec'y of Health & Human Servs.*, No. 90-3576Vm 1997 WL 588954, *2 (Fed. Cl. Spec. Mstr. Sept. 5, 1997); *Barnes v. Sec'y of Health & Human Servs.*, No. 90-1101V, 1999 WL 797468, *4 (Fed. Cl. Spec. Mstr. Sept. 17, 1999); *Rupert v. Sec'y of Health & Human Servs.*, No. 99-774V, 2002 WL 360005, * 5 (Fed. Cl. Spec. Mstr. Feb. 14, 2002), *remanded on other grounds*, 52 Fed. Cl. 684 (2002)).

Here, although Ms. Riley billed at attorney rates for most of the work she performed, the billing entries reveal that some of that work was in fact paralegal. For instance, Ms. Riley billed time for preparing exhibits and routine filings, such as the "[f]iling and service of [a] motion to reset [a] deadline." *See* Pet'r's Mot. for AFC, Ex. C at 4, 15. At least 2.50 hours of Ms. Riley's billable time are best characterized as paralegal work, and I therefore find that a reduction in attorneys' fees is warranted.

### iii.    Excessive and Redundant Billing

"Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 434). I find the

overbilling by Mr. Ragsdale, Ms. Riley, and the firm's paralegals on multiple tasks extremely troubling. For instance, Ms. Riley and Ms. Burke billed for reviewing and summarizing the same records. *See, e.g.*, Pet'r's Mot. for AFC, Ex. C at 2, 7. On several occasions, both Ms. Riley and Mr. Ragsdale billed time for reviewing the same records, for drafting the same filings, and for conducting the same research on legal issues, such as evaluating Petitioner's lost income issue. *See, e.g.*, *id*. at 4, 10, 12–13. Ms. Riley also billed excessively for "confer[ring] with [R]espondent's counsel" on several occasions. *See, e.g.*, *id*. at 7–8, 12. Mr. Ragsdale and Ms. Riley, together with their paralegals, also billed more than ten hours for intraoffice communications, including conferences with each other, as well as Ms. Chambers, Petitioner's former counsel, which are not compensable in the Vaccine Program. *See, e.g.*, *id*. at 2–3, 5–7, 8–16; *see also Davis v. Sec'y of Health & Human Servs.*, No. 15-159V, 2017 WL 877277, at *6 (Fed. Cl. Spec. Mstr. Feb. 7, 2017) (finding the billing pattern for intraoffice meetings and e-mails "disturbing" and reducing the attorneys' fees by twenty percent). At least 80 hours of Petitioner's billable time constitute excessive or redundant entries, or intraoffice communications. I therefore find that a reduction in attorneys' fees is appropriate.

For all these reasons, I will reduce the amount of attorneys' fees awarded by twenty percent. Because Petitioner requested $110,185.00 in attorneys' fees, this results in a reduction of **$22,037**.[10]

### B. Final Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $20,846.89 in attorneys' costs. This amount comprises the cost of obtaining related to travel, obtaining medical records, postage, and retaining a lifecare planner. All the costs appear reasonable in my experience and Petitioner has provided adequate documentation for them. Petitioner is thus entitled to the full amount of costs sought.

### III. Conclusion

Based on the above, I find that Petitioner is entitled to the following award of reasonable attorneys' fees and costs:

| Final Attorneys' Fees Requested in Motion | $110,185.00 |
|---|---|
| (Reduction to Attorney Hours) | - $22,037.00 |
| **Final Attorneys' Fees Awarded** | **$88,148.00** |
| | |
| Final Costs Requested | $20,846.89 |
| **Final Costs Awarded** | **$20,846.89** |
| **Total Amount Awarded** | **$108,994.89** |

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2012), I have reviewed the billing records and costs in this case and find that Petitioner's request for final attorneys' fees

---

[10] $110,185.00 * 0.20 = $22,037.

and costs, other than those reductions indicated above, is reasonable and should be awarded at this time. Accordingly, I hereby award **a total of $108,994.89 to be issued in the form of:**

>**A lump sum in the amount of $108,994.89,** representing reimbursement for attorneys' fees and costs, in the form of a check payable to Petitioners' attorney, Mr. Milton Clay Ragsdale.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court shall enter judgment in accordance herewith.[11]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[11] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).